UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NANCY RODLAND AND OLE RODLAND,           :

        Plaintiffs,           :

        10 Civ. 5888 (AJP)

    -against-           :

        **OPINION AND ORDER**

JUDLAU CONTRACTING, INC., ALI ELSAYED    :
d/b/a ALEXANDRIA TILE COMPANY,
        :
        Defendants.
        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Plaintiffs Nancy and Ole Rodland bring this action alleging that Nancy Rodland was injured when defendants Judlau Contracting, Inc. and Ali Elsayed d/b/a Alexandria Tile Company (hereafter, "Alexandria") negligently installed a temporary cement transition during renovations of a subway platform.  (See Dkt. No. 1: Compl.)

        Presently before the Court are defendants' joint motion for summary judgment.  (Dkt. No. 31: Defs. Notice of Motion.)  The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 16.)

        For the reasons set forth below, defendants' joint summary judgment motion is DENIED as to Judlau but GRANTED as to Alexandria.

## FACTS

        In August 2007, the MTA's 59th Street Columbus Circle subway station was under renovation that included "demolition of the existing concrete subway platforms and the installation

of floor tile on the platforms."  (Dkt. Nos. 34 & 39: Defs. & Pls. Rule 56.1 Stmts. ¶¶ 4, 6.)  As the MTA's general contractor, Judlau demolished the existing platform flooring so that its subcontractor Alexandria could install the floor tiles.  (Defs. & Pls. Rule 56.1 Stmts. ¶¶ 3, 5.)  By removing the flooring, Judlau created "elevation differentials" on the platforms.  (Defs. & Pls. Rule 56.1 Stmts. ¶ 6.)  Judlau addressed the elevation differentials by installing temporary cement transitions "at a sloped angle."  (Defs. & Pls. Rule 56.1 Stmts. ¶¶ 1, 9-10.)  Alexandria did not create the elevation differentials or install the temporary cement transitions.  (Defs. & Pls. Rule 56.1 Stmts. ¶¶ 24-26, 28.)

On August 10, 2007, Virginia residents Nancy and Ole Rodland were exiting a subway car on the northbound IND train platform of the 59th Street Columbus Circle subway station when Nancy Rodland tripped and fell on the cement transition installed by Judlau.  (Dkt. No. 1: Compl. ¶¶ 1,18; Pls. Rule 56.1 Stmt. ¶ 41.)  According to the Rodlands, the cement transition was 2 to 3 inches high with a hypotenuse of 6 to 8 inches.  (Ex. 18: N. Rodland Dep. at 53-54; Ex. 19: O. Rodland Dep. at 9-10.)[1]  Nancy Rodland did not see any warning signs posted in the area.  (Pls. Rule 56.1 Stmt. ¶¶ 42-43; N. Rodland Dep. at 54.)  Additionally, no one warned Nancy Rodland that the platform was under construction, and she did not see any construction workers on the platform when she fell.  (N. Rodland Dep. at 58.)  As a result of her fall, Nancy Rodland fractured the fifth metatarsal on her left foot.  (Ex. 13: Dr. Thomas Report at 1, 4.)

---

[1]  References to "Ex." followed by a numeral are to the exhibits to plaintiffs' Rule 56.1 Statement (Dkt. No. 39); references to "Ex." followed by a letter are to the exhibits to the affidavit of defendants' attorney Anthony A. Lenza Jr. (Dkt. No. 32).

3

Represented by counsel, Nancy Rodland filed an August 4, 2010 complaint alleging that Judlau and Alexandria negligently caused her injuries

> in that they failed to properly maintain the premises, allowed a dangerous, uneven surface to exist, failed to warn of the dangerous condition, failed to remedy the condition, failed to take the proper steps to safeguard plaintiff, failed to set up barriers and warnings, failed to make the premises safe for commuters, pedestrians, the general public and the plaintiff in particular, failed to exercise due and required care and caution in the maintenance of the premises; and otherwise failed to use reasonable care, caution and prudence.

(Compl. ¶ 20.)  In addition, because of the injury to his wife, Ole Rodland sued Judlau and Alexandria for loss of her services and consortium. (Compl. ¶¶ 24-25.)

## ANALYSIS

**I.     SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Ret. Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support

4

the non-moving party's case on an issue on which the non-movant has the burden of proof. See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is generally disputed." Fed. R. Civ. P. 56(c); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'" (citations omitted)), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[2/] The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source

---

[2/]   See also, e.g., Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

## II. JUDLAU IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE DISPUTED ISSUES OF MATERIAL FACT EXIST

Judlau argues that it is "entitled to summary judgment because there are no material triable issues of fact." (Dkt. No. 33: Defs. Br. at 1; Dkt. No. 41: Defs. Reply Br. at 1.) This Court disagrees. In her deposition, Nancy Rodland testified that she could not see the platform when she exited the subway car because the platform crowded with people. (Ex. 18: N. Rodland Dep. at 35, 40.) After exiting the subway car, Nancy Rodland took a few steps before twisting her left foot and falling to the floor. (N. Rodland Dep. at 34-41.) After falling, Nancy Rodland turned around and saw a concrete "slanted drop" in the platform that was 2 1/2 to 3 inches high with a hypotenuse of

6 to 8 inches. (N. Rodland Dep. at 48-49, 53-54.) Nancy Rodland did not see any warning signs posted in the area. (See page 2 above.) Moreover, Nancy Rodland testified that no one warned her that the platform was under construction and she did not see any construction workers on the platform when she fell. (See page 2 above.)

While not contesting that it created the uneven platform or that it installed the cement transition, Judlau argues that it "installed construction signs on the columns of the subway platforms stating 'Watch Your Step' to make pedestrians aware of the difference in elevation on the platform." (Dkt. No. 34: Defs. Rule 56.1 Stmt. ¶ 16.) Additionally, Judlau disputes Nancy Rodland's claim that no one warned her that the platform was under construction, asserting that the train conductors were "[s]upposed to announce" that the subway station was under construction. (Ex. E: Shah Dep. at 60; Ex. J: Rothstein Aff. ¶ 10.) As these material facts are in dispute, summary judgment is inappropriate.[3] (See cases cited on pages 3-5 above.)

Relying on Shmushkina v. Price is Right of Brooklyn, Inc., 16 Misc. 3d 883, 839 N.Y.S.2d 683 (Sup. Ct. Kings Co. 2007), Judlau argues that it is entitled to summary judgment because plaintiffs have failed to provide expert testimony that the cement transition was inherently unsafe. (Dkt. No. 41: Judlau Reply Br. at 7-8.) In Shmushkina, the plaintiff slipped and fell while walking down a ramp as she was leaving the defendant's grocery store. 16 Misc. 3d at 884, 839

---

[3] The materiality of these disputed facts is evident from Judlau's expert's statement that "the sloped transition described by the Rodlands is safe for pedestrians aware of its existence." (Rothstein Aff. ¶ 10, emphasis added.) To the extent Nancy Rodland claims she had no notice or warning of the construction or the cement transition, this evidence supports her claim that the cement transition was unsafe.

N.Y.S.2d at 683.  The plaintiff sued the defendant for negligence, arguing that "the ramp was inherently dangerous because in her estimation the ramp sloped at an angle of thirty degrees at the place where she fell."  Id.  In addressing the plaintiff's evidence, the trial court noted that:

> The difficulty with plaintiff's claim is that she did not call upon an expert to determine the precise slope of the ramp, but instead relied upon her own guestimate of the measurement.  Nor did she submit expert testimony on the question of whether this ramp was inherently unsafe based on good and accepted engineering practices, the date of construction and the applicable New York City Administrative Code provisions.

Id. at 884, 839 N.Y.S.2d at 683-84.  In granting defendant's summary judgment motion, the trial court found that "the plaintiff is not an engineering expert and cannot provide factual information as to the slope of the ramp and the safety ramifications outcome from same so as to demonstrate that the ramp was so sharply sloped that it breached the applicable standard of care."  Id. at 886, 839 N.Y.S.2d at 685.

Here, the Rodlands' expert addressed only whether the cement transition violated the New York State Building Code and other building provisions; he did not have an opinion on whether Judlau was negligent or whether the cement transition was inherently unsafe.  (Ex. I: Licht Dep. at 40, 78; see Ex. 16: Licht Report.)  Consequently, Judlau argues that it is entitled to summary judgment under Shmushkina because the Rodlands have failed to provide expert testimony that the cement transition was inherently unsafe.  (Judlau Reply Br. at 7-8.)

This argument is unavailing.  As an initial matter, "[a] federal court sitting in diversity must follow the law as enunciated by the highest court of the state, here, the New York Court of Appeals."  Williams v. J.P. Morgan & Co., 199 F. Supp. 2d 189, 191 (S.D.N.Y. 2002); see

8

also, e.g., Calvin Klein Ltd. v. Trylon Trucking Corp., 892 F.2d 191, 194 (2d Cir. 1989) ("'A federal court sitting in diversity must follow the law directed by the [highest court] of the state whose law is found to be applicable, and if there is no direct decision by the highest court of that state, the federal court should determine what it believes that state's highest court would find if the issue were before it.'"); NAP, Inc. v. Shuttletex, Inc., 112 F. Supp. 2d 369, 377 (S.D.N.Y. 2000) ("A federal court sitting in diversity must look to the highest state court for guidance on the interpretation of state law.").

Where the New York Court of Appeals has not ruled on an issue, federal courts are "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." V.S. v. Muhammad, 595 F.3d 426, 432 (2d Cir. 2010); see also, e.g., Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 134 (2d Cir. 1999) (Federal courts must "apply the law as interpreted by New York's intermediate appellate courts . . . unless we find persuasive evidence that the New York Court of Appeals, which has not ruled on this issue, would reach a different conclusion.").

Tellingly, Judlau has not provided any New York Court of Appeals or Appellate Division cases supporting his argument that a plaintiff must provide expert testimony to establish that a "ramp" was inherently dangerous because of the degree of its slope. In fact, Shmushkina noted that "this appears to be a question of first impression in this state." Shmushkina v. Price is Right of Brooklyn, Inc., 16 Misc. 3d at 884, 839 N.Y.S.2d at 684. Moreover, Shmushkina has only been cited twice and never for this proposition. Consequently, as Shmushkina is only a trial level case, this Court is not bound to follow it. See, e.g., Conn. State Fed'n of Teachers v. Bd. of Educ.

Members, 538 F.2d 471, 485 (2d Cir. 1976) ("[A]s a definitive exposition of state law, these two unreported decisions by trial courts of general jurisdictions are not binding" on federal courts.); Svensson v. Securian Life Ins. Co., 706 F. Supp. 2d 521, 524 n.2, 536 (S.D.N.Y. 2010) (In a diversity case, a federal court is not bound by a state trial court decision.); White v. Johnson & Johnson Prods., Inc., 712 F. Supp. 33, 37 (D.N.J. 1989) ("A federal district court may give serious consideration to the opinion of an intermediate appellate court in the absence of a decision by the state's highest court.  Indeed, such an opinion may be deemed to be presumptive evidence of state law.  No such presumption applies to state trial court opinions." (citations omitted)); cf. United States v. Wyo. Nat'l Bank of Casper, 505 F.2d 1064, 1067 (10th Cir. 1974) ("A federal court need not follow state decisions which are not precedents in the state itself.").

Additionally, Shmushkina itself recognized that New York cases make "a distinction between those circumstances that may be readily discernible by a jury using common knowledge, and those which require professional expertise." Shmushkina v. Price is Right of Brooklyn, Inc., 16 Misc. 3d at 885, 839 N.Y.S.2d at 684.  Shmushkina even notes as an example that "an expert's testimony was not needed to establish the commonly known fact that a person's foot will slide when stepping on dried cement, sand and gravel." Id. at 885, 839 N.Y.S.2d at 684 (citing Vispetto v Bassuk, 41 A.D.2d 958, 959, 343 N.Y.S.2d 988, 990 (2d Dep't 1973)).

This Court finds that a New York jury does not need expert testimony to discern that a commuter on a crowded subway platform might trip and fall on a sloped cement transition, particularly if there was no notice or warning that the platform was under construction and uneven.

Accordingly, Rodland's summary judgment motion is DENIED.

### III. ALEXANDRIA IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE RODLANDS HAVE NOT PROVIDED ANY EVIDENCE THAT ALEXANDRIA CREATED THE UNEVEN PLATFORM SURFACE OR INSTALLED THE CEMENT TRANSITION

Alexandria did not create the uneven platform surface or install the cement transition that caused Nancy Rodland's injury. (See page 2 above.) Moreover, "[w]hen the subway platform was open to the public, Alexandria only worked within a barricaded area which separated Alexandria's work from the public." (Dkt. No. 34: Defs. Rule 56.1 Stmt. ¶ 25.)

The Rodlands do not dispute any of these facts (Dkt. No. 37: Rodland Br. at 10; see also page 2 above); instead, they argue that Alexandria is liable because its "poor performance contributed to the circumstances where Nancy Rodland was exposed to the dangerous condition on the platform without any warning or protection in place" (Rodland Br. at 10). Specifically, the Rodlands argue that Alexandria "regularly created unsafe conditions, fell behind schedule, had to be compelled to further alter the order of its work so that the tile work could be done, and ultimately was dismissed by Judlau." (Rodland Br. at 10.)

This argument is meritless. It was the uneven platform and cement transition - both created solely by Judlau, not Alexandria - that caused her injury. Moreover, even if Alexandria's poor performance delayed the renovations and necessitated the extended use of the temporary cement transition, this only would create indemnity issues between Judlau and Alexandria, which are irrelevant to the Rodlands. Accordingly, because there is no evidence that Alexandria caused Nancy Rodland's injury, Alexandria entitled to summary judgment.

## CONCLUSION

For the reasons stated above, defendants' joint summary judgment motion (Dkt. No. 31) is <u>DENIED</u> for Judlau but <u>GRANTED</u> for Alexandria.

## SCHEDULING

The Joint Pretrial Order is due February 3, 2012.

SO ORDERED.

DATED:	New York, New York
	January 6, 2012

	_____
	**Andrew J. Peck**
	United States Magistrate Judge

Copies **by ECF** to:	Walter A. Kretz Jr., Esq.
	Anthony A. Lenza Jr., Esq